UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| LETASHA MYATT, on behalf of herself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CAUSE NO.: 1:10-CV-64-TLS |
| DAVID J. GLADIEUX, SHERIFF OF ALLEN COUNTY, INDIANA, (in his official capacity), | ) ) ) ) | |
| Defendant. | ) ) | |

**OPINION AND ORDER**

This matter is before the Court on Class Counsel's Verified Petition for Interim Award of Fees and Costs [ECF No. 167], filed on March 13, 2015. Class Counsel prevailed on the class members' claims that their civil rights were violated under 42 U.S.C. § 1983. Therefore, Class Counsel seeks an award of attorney's fees under 42 U.S.C. § 1988, and costs under 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54(d). On February 17, 2015, the Court had informed the parties that it anticipated withholding an award until various post-verdict issues were addressed. The Court now resolves Class Counsel's request for an interim award of attorney's fees and costs.

**BACKGROUND**

On February 26, 2010, the Plaintiff, LeTasha Myatt, filed a Complaint [ECF No. 1] against the Defendant, Allen County Sheriff Ken Fries, in his official capacity. The Plaintiff brought suit on behalf of herself and others similarly situated, and alleged that the Defendant's actions violated the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983.

Specifically, the Plaintiff alleged that the Defendant's policy caused her to be detained in the Allen County Jail for more than forty-eight hours before being taken before a magistrate judge for an initial probable cause determination. On June 25, 2010, the Court issued an Opinion and Order [ECF No. 20] that granted the Plaintiff's Motion to Certify Class [ECF No. 4]. At the parties' request, the Court amended the class definition and certified the class as follows:

> [I]individuals arrested without a warrant and booked into the Allen County Jail between 5:00 a.m. on Friday and 9:00 a.m. on Saturday between the dates of February 29, 2008, and March 20, 2010, inclusive, as well as any additional class members who exist due to court holidays observed by the Allen County Superior Court and the Allen County Circuit Court during the time period of February 29, 2008, and March 20, 2010, where such additional class members did not receive a probable cause determination within 48 hours from the time of their arrest.

(the "Class") [ECF No. 39]. Although the parties entered into a Consent Decree [ECF No. 29], in which the Defendant conceded liability in this case and implemented new policies, the parties were unable to agree upon damages. On January 20, 2015, following a four-day trial, a jury returned a verdict [ECF 158] that awarded the Class approximately $360,000 in general damages, separate and apart from fees and costs [ECF No. 167, ¶ 4].

After the trial, the parties filed a Joint Status Report [ECF No. 166] that outlined a schedule regarding the post-verdict issues. Pursuant to this, Class Counsel filed its Verified Petition for Interim Award of Fees and Costs [ECF No. 167], dated March 13, 2015, along with accompanying affidavits. The Verified Petition requests $311,795 in interim attorney's fees and $2,313.14 in costs for work done from February 2, 2010, through March 12, 2015.[1] In total, Class Counsel spent 875 hours litigating this case and they seek $314,108.14 in fees and costs. In

---

[1] The Court and the parties understand that Class Counsel intends to submit another fee request for charges incurred after March 12, 2015.

June 2015, the Defendant filed his Response [ECF No. 170] and Supplement [ECF No. 175], followed by Class Counsel's Reply [ECF No. 176].

**ANALYSIS**

**A.     Attorney's Fees**

A party who prevails in a civil rights action is entitled to recover reasonable attorney's fees. 42 U.S.C. § 1988(b); *City of Riverside v. Rivera,* 477 U.S. 561, 578 (1986). "To determine a reasonable fee, the district court uses the lodestar method, multiplying the 'number of hours reasonably expended on the litigation . . . by a reasonable hourly rate.'" *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The lodestar calculation is strongly presumed to yield a reasonable attorney's fee award. *Id.* at 640. Nevertheless, the court may adjust the fee based on factors not included in the computation. *Montanez v. Simon*, 755 F.3d 547, 553 & n.2 (7th Cir. 2014) (citing *Hensley*, 461 U.S. at 430 n.3, 434 n.9), *cert. denied sub nom.*, *Montanez v. Fico*, 135 S. Ct. 459 (2014) (mem.). "[T]he district court is in the best position to make the 'contextual and fact-specific' assessment of what fees are reasonable." *Id.* at 553.

**1.     *Lodestar Calculation***

A reasonable hourly rate is derived from the market rate for the services rendered. *Pickett*, 664 F.3d at 640 (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). When determining the hourly rate for an attorney, "the amount the attorney actually bills for similar work" is the best evidence of his market rate. *Montanez*, 755 F.3d at 553. If the attorney's actual billing rate cannot be determined, "then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney

[by courts] in similar cases." *Id.* The petitioning party has the burden of establishing the market rate for the work, and if that burden is not met, "the district court can independently determine the appropriate rate." *Id.*

Class Counsel's Verified Petition seeks fees for work performed at four hourly rates. Attorneys Christopher C. Myers and Ilene M. Smith billed the majority of the hours. Myers billed 641.6 hours and requests a compensation rate of $400 per hour. Smith billed 167.2 hours and asks for an hourly rate of $300. A legal intern billed .6 hours at $125 per hour, and paralegals billed 65.6 hours at $75 per hour. Class Counsel argues these hourly rates are reasonable given their experience, the market rates in the community, and the results achieved in this case.[2] The Defendant does not object to the hourly rates for the legal intern or the paralegals. However, the Defendant contends that the hourly rates claimed by Attorneys Myers and Smith are excessive, and suggests hourly rates of $300 and $200, respectively. The Defendant substantiates this rate by citing to the retainer agreement executed by the Named Plaintiff with Class Counsel [ECF No. 176-6], the cases cited in Myers's affidavit, and two third-party affidavits.

To determine the market rate, a court should first look to the amount the attorney actually bills for similar work. Except for Smith's statement in her affidavit that her current rate is $300 per hour and Myers's request for $400 per hour in this case, Class Counsel has submitted no evidence to allow this Court to determine their actual billing rate. The Seventh Circuit has

---

[2] Class Counsel's Reply makes a brief reference to this Court's ability to award attorney's fees based on current market rates or to use the historic rate and assess interest. *Lightfoot v. Walker*, 826 F.2d 516, 523–24 (7th Cir. 1987). The Seventh Circuit has approved of using current rates, *id.*, and its courts generally use current rates to compensate attorneys for delayed awards. *Skelton v. Gen. Motors Corp.,* 860 F.2d 250, 255 n.5 (7th Cir.1988). Given this, and that the parties' briefing only addresses current rates, this Court will apply the current rates method to ensure Class Counsel are fully compensated.

acknowledged that it is difficult to determine the hourly rate of an attorney who uses contingent fee agreements. *Pickett*, 664 F.3d at 640. In this briefing, Class Counsel has not informed the Court how frequently it uses contingent fee agreements. Although the Named Plaintiff's retainer agreement is labeled a "contingency fee/hourly hybrid arrangement" for attorney's fees [Pet'r's Reply, Ex. F ¶ 2, ECF No. 176-6],[3] the Named Plaintiff would only personally owe hourly fees in certain scenarios [Pet'r's Reply, Ex. F ¶¶ 2(e), 14, ECF No. 176-6]. *Montanez*, 755 F.3d at 553–54 (holding that a district court, when addressing a similar contract, did not abuse its discretion by giving less weight to an "acknowledged" hourly charge as evidence of the market hourly rate). Regardless of one district court's determination that language in a similar retainer agreement deserved less weight, the present case is different because (1) *Montanez* dealt with a retainer agreement between the attorneys and a client in *another case*; and (2) there is no indication that the retainer agreement in *Montanez* contained such a detailed description of how the hourly rate was calculated. *Id.*

Class Counsel correctly points out that the hourly fee is stated under the heading "*Quantum Meruit* and Reasonable Hours Rates," but the text in this section then reads, "the current normal hourly billing rates are as follows: . . . Christopher C. Myers[:] $300 per hour; . . . Associate Attorney[:] $200 per hour." [Pet'r's Reply, Ex. F ¶ 11(c), ECF No. 176-6]. Further, this section states that these hourly rates were calculated by considering the burdens and risks of accepting "this representation," and Class Counsel is seeking fees under a scenario in which the retainer agreement permitted recovery based on the hourly rate [Pet'r's Reply, Ex. F ¶¶ 2(a), 11(a)-(b), ECF No. 176-6]. The Court is hesitant to hold that these hourly rates in the retainer agreement are dispositive of Class Counsel's actual billing rates. However, these rates are

---

[3] Class Counsel attached the document to its Reply because the Defendant attached an incomplete copy of the document to its Supplement to Response to Plaintiff's Counsel's Verified Petition [ECF No. 175-1].

probative in determining the market billing rate for the services rendered. *Blum v. Stenson*, 465
U.S. 886, 895 n.11 (1984) ("[T]he critical inquiry in determining reasonableness is now
generally recognized as the appropriate hourly rate. And the rates charged in private
representations may afford relevant comparisons."); *see also Pickett*, 664 F.3d at 642 ("The court
is to consult the same market when determining a reasonable hourly rate for contingent fee cases
and non-contingent fee cases.").

Class Counsel relies mainly on the "next best evidence" to support their requested hourly
rates. *Pickett*, 664 F.3d at 640. This includes affidavits submitted on their own behalf, third-party
affidavits, and a sampling of cases in the Northern District of Indiana where the prevailing
attorneys obtained fee awards. Class Counsel did not submit any affidavits or court orders that
showed their actual billing rates in similar cases. Although this Court is mindful that Class
Counsel is not required to provide a level of evidence that is nearly unattainable, *Pickett*, 664
F.3d at 646, Class Counsel's "next best evidence" supporting the requested hourly rates for
Myers and Smith is less than persuasive. As a result, the Court holds that the substantial evidence
presented does not support Class Counsel's claimed market rate for their work. *Pickett*, 664 F.3d
at 646 ("A district court is entitled to determine the probative value of each [evidentiary]
submission." (quoting *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 895 (7th Cir. 2001))
(internal quotation marks omitted)).

To support his request for an hourly rate of $400, Myers submitted his own affidavit
describing his experience [ECF No. 167-4]. Myers's affidavit states that he has thirty years'
experience in employment litigation and civil rights litigation [Myers Aff. ¶ 9, ECF No. 167-4].
Without pointing to any examples of similar cases, Myers notes he has served as lead counsel in
"one-hundred plus . . . jury trials," has argued before the Seventh Circuit "forty plus times," and

6

has filed five petitions for *writ of certiorari* to the United States Supreme Court [Myers Aff. ¶ 9, ECF No. 167-4]. Additionally, Myers points out that he has been a CLE speaker regularly, and "has participated in presentations before the Inns of Court regarding employment litigation matters." [Myers Aff. ¶ 9, ECF No. 167-4].

The third-party affidavits offer some support for Myers's hourly rate. Class Counsel submitted third-party affidavits from attorneys with experience of thirty years or more. Myers has been in practice for a comparable period of time. Certain aspects of the affidavits show cause for concern. Alan VerPlanck's affidavit states that he is familiar with the common billing practices in Fort Wayne [VerPlanck Aff. ¶ 8, ECF No. 167-1], yet the affidavit does not state (1) VerPlanck's current or past hourly rate (in any type of case); (2) when VerPlanck litigated his most recent civil rights cases; (3) whether he has ever obtained fees in a similar case; or (4) whether he has ever litigated a class action case. VerPlanck's affidavit only shows that he has a diverse practice and he believes Myers's fee is reasonable, which offers little help [VerPlanck Aff. ¶¶ 6, 9, 10, ECF No. 167-1]. *Montanez*, 755 F.3d at 554 ("[C]onclusory affidavits from attorneys 'merely opining' on the reasonableness of another attorney's fee—unlike affidavits describing what 'comparable attorneys charge for similar services'—have little probative value." (quoting *Pickett*, 664 F.3d at 647)).

Steven L. Jackson's affidavit is more insightful and identifies one recent case [Jackson Aff. ¶ 5, ECF No. 176-2], but he does not directly state the rate he received for that case, or the specific rates awarded to other civil rights attorneys in the relevant community.[4] *Montanez v. Fico*, 931 F. Supp. 2d 869, 875 (N.D. Ill. 2013) (concluding a similar third-party affidavit was

---

[4] Jackson's Affidavit identifies his current hourly rate as $660, but the paragraph it appears in is set apart from, and is not tied to Jackson's discussion of his most recent case [Jackson Aff. ¶¶ 5, 8, ECF No. 176-2].

not instructive), *aff'd sub nom. Montanez v. Simon,* 755 F.3d 547 (7th Cir.), *cert. denied sub nom.*, *Montanez v. Fico*, 135 S. Ct. 459 (2014) (mem.). Likewise, Jackson's first-hand knowledge of Myers's skills, obtained by Jackson mediating "ten matters" for Myers and serving as opposing counsel in "more than 25 matters," while only pointing to one, unnamed "employment law jury trial" with no mention of rates, is not helpful in identifying Myers's experience as a civil rights litigator [Jackson Aff. ¶ 11, ECF No. 176-2]. *Id.* Noticeably, Jackson also does not identify any § 1983 case that he has litigated. *Cf. People Who Care v. Rockford Bd. Of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1313 (7th Cir. 1996) (calling it a close case, but affirming the district court's decision to deny the attorney the market rate for experienced desegregation attorneys after the attorney admitted that he never handled a desegregation case, even though the attorney provided evidence of his work in other civil rights cases).

Class Counsel's affidavit by Richard A. Waples, which identifies his hourly rate as $550 and states past rates in contested fee disputes, has less probative value because Waples earns these rates in the local market area for Indianapolis—not Fort Wayne [Waples Aff. ¶¶ 8–9, ECF No. 176-1]. Although "community" may be plausibly read to mean "local market area" or "community of practitioners," the latter is likely when "the subject matter of the litigation is one where the attorneys practicing it are highly specialized and the market for legal services in that area is a national market." *Jeffboat, LLC v. Dir., Office of Workers Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009); *see also Sierra Club v. Jackson*, No. 11-CV-315-WMC, 2013 WL 5409036, at *4 (W.D. Wis. Sept. 25, 2013) (holding Clean Air Act litigators compete in a local market area; thus, *Jeffboat* "makes little sense" in this context); *Davis v. City of Springfield*, No. 04-3168, 2010 WL 375180, at *4 (C.D. Ill. Jan. 22, 2010) (concluding the market rate in the *Springfield* community applied because the case involved a "typical Title VII retaliation claim"

and the attorneys practiced within a local or regional market area). Myers had VerPlanck and Jackson opine as to "the market rates charged in Fort Wayne." [Jackson Aff. ¶ 12, ECF No. 176-2; VerPlanck Aff. ¶ 5, ECF No. 167-1]. The legal markets in large cities like Indianapolis and Chicago have different local rates compared to the substantially smaller Fort Wayne market. Myers is litigating in his local community, and even though this is a civil rights class action, this was not a highly specialized case where counsel competed with firms nationwide to be the first to file.

Despite the preceding discussion, the Court has not ignored Class Counsel's evidence that some attorneys in the Fort Wayne area bill at rates in excess of $500 per hour. The Court finds that other aspects of Class Counsel's affidavits better reflect the market rates. First, Waples states that "court awards of attorney fees in civil rights cases throughout Indiana. . . . [v]ary between approximately $200 to over $600 per hour, depending upon the experience and skill level of the particular attorney." [Waples Aff. ¶ 6, ECF No. 176-1]. Although not exactly matching, this range mirrors Myers's summary of numerous cases decided in the Northern District of Indiana since 2005 that are "indicative of the *current* market rates." [Myers Aff. ¶ 6, ECF No. 167-4] (emphasis added). From these data points, it seems courts in the Northern District of Indiana have awarded fees in an hourly range starting slightly below $200 and ending around $400. Looking specifically at Fort Wayne, in 2010 Judge Lee identified the rates for partners in Fort Wayne as between $225 and $350 per hour. Further, according to Myers' affidavit, the highest hourly rate awarded by this Court is $235 per hour. Based on a cumulative assessment of Class Counsel's evidence, a rate of $350 is a reasonable, current hourly rate for Myers's legal services.

Smith offers fewer details regarding her experience as a civil rights litigator. Although Smith states that she became employed at Myers's firm on June 3, 2005, and identified her current rate as $300 per hour, the rest of the affidavit only describes her role in this case [Smith Aff. ¶¶ 2–4, ECF No. 167-5]. The Verified Petition's supporting memorandum and billing records show that Smith spent a significant amount of time working on this case. The third-party affidavits also identified Smith as Myers's "associate." In light previous analysis of Class Counsel's third-party affidavits, the retainer agreement, and the other evidence presented by Class Counsel, a current hourly rate of $250 is reasonable for Smith.

The Defendant does not object to the current hourly rates for the legal intern or the paralegals. Based on the evidence submitted by Class Counsel, including the third-party affidavits and case results in Myers's affidavit, the Court finds that the proposed hourly rates for the legal intern and paralegals are reasonable. *Pickett*, 664 F.3d 632, 647 (7th Cir. 2011) (holding that the attorney's substantial evidence pointed to a rate lower than the one requested, but observing that if defendant had submitted no evidence on this issue, then the district court would be required to award fees at plaintiff's proposed rate).

Having found that the reasonable, current hourly rates are as follows: Christopher C. Myers ($350); Ilene M. Smith ($250); Legal Intern ($125); Paralegals ($75), the lodestar amount for the 875 hours billed by Class Counsel through March 12, 2015 is $271,355.[5]

---

[5] The Seventh Circuit has held that a district court may use the Consumer Price Index to determine an attorney's reasonable hourly rate. *Pickett*, 664 F.3d at 647. The Defendant mentions the Consumer Price Index ("CPI") in the closing paragraph of the Supplement [ECF No. 175], but the Defendant seems to only make a passing reference to provide a point of comparison for the increased rate Class Counsel claims is warranted due to a passage of time. The Court makes this conclusion because the Defendant has not asked the Court to take judicial notice of the CPI, nor has he discussed the CPI in enough detail to put Class Counsel on notice that he was asking the Court to determine Class Counsel's reasonable, current market rate separately based on the CPI. In line with this, Class Counsel's Reply did not address the CPI. Under *Pickett*, a district court cannot rely sua sponte on a CPI-adjusted rate because this would deprive the plaintiff of an opportunity to contest its application or argue how it should apply in the present case.

**2.** *Lodestar Adjustments*

Once the Court calculates the lodestar amount, it must consider whether an upward or downward adjustment is warranted. *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010); *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012). When a plaintiff achieves "excellent results," her attorney should receive the entire lodestar. *Montanez*, 755 F.3d at 556 (quoting *Hensley*, 461 U.S. at 435–36). In contrast, the lodestar may be excessive where a plaintiff only achieves a limited or partial success. *Id.* Reduction is not warranted "simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 557–58 (quoting *Hensley*, 461 U.S. at 435).

Except for setting forth what he contends are the reasonable hourly rates, the Defendant does not argue the extent to which the lodestar should be reduced. To show that the Class achieved a limited success, the Defendant highlights the difference between the damages requested and the damages awarded, that the jury verdict exceeded the Defendant's Rule 68 Offer by $72,000, and that the Class could not present evidence of emotional distress-type damages for loss of liberty at trial. In response, Class Counsel states that the jury's substantial damages award to the Class, along with the Defendant admitting wrongdoing and instituting a new policy, shows that the Class succeeded.

Given this case's outcome, a downward adjustment of the lodestar amount is not warranted. The Defendant attempts to downplay the significance the Class's recovery by pointing out that Class Counsel asked the jury for slightly over $1 million, which was calculated by multiplying (1) the total number hours the Class was over-detained; by (2) a specific, per hour

---

*Pickett*, 664 F.3d at 648. Given that the Defendant did not use the CPI in a manner that indicated he was presenting the CPI as an independent basis for determining the current market rate, and considering the result in *Pickett*, this Court did not utilize the CPI as it set Class Counsel's current market rate.

dollar amount. As Class Counsel notes, the jury instead assigned damages using a tiered/bracketed method that set dollar amounts for various ranges of over-detention. Therefore, assessing the general damages in terms of total dollar amount may not be most helpful, but a $360,000 general damages award, which exceeded the Defendant's $288,000 Rule 68 offer and preserved the claims of the Plaintiffs who sought special damages, is not an insignificant. *Montanez*, 755 F.3d at 551–52, 556–57 (affirming the district court's decision to reduce the lodestar amount by 50%, resulting in a fee award of $108,350.587, when the plaintiff lost four of his six claims, only won $2,000 in damages, and the case lacked public importance). Further, when a plaintiff seeks injunctive relief to obtain compliance with an important constitutional guarantee, the amount of money damages accompanying such relief is less important. *Lynch v. City of Milwaukee*, 747 F.2d 423, 429 (7th Cir. 1984) ("[W]here the primary relief sought is injunctive or similarly non-monetary, the amount of a § 1988 fee award is not to be reduced merely because money damages may be low or nominal. Advancing the public good beyond any individual goal is one of the aims of § 1988 . . . ."). Class Counsel obtained an important result by causing the Defendant to institute a new policy.

The Defendant also cites to Class Counsel's companion cases, *Bickel v. Sheriff of Whitley County*, No. 1:08-cv-102, 2015 WL 1402018 (N.D. Ind. Mar. 26, 2015) and *Strunk v. LaGrange County Sheriff Terry Martin*, No. 1:10-cv-23 (N.D. Ind. Sept. 25, 2015), and essentially argues that attorney's fees should be reduced here because Class Counsel had less success compared to the settlements obtained in *Bickel* and *Strunk*. For support, the Defendant seems to rely on *Inks v. Healthcare Distributors of Indiana, Inc.*, 901 F. Supp. 1403, 1413 (N.D. Ind. 1995). First, the Defendant's reliance on these results ignores this Court's finding in *Bickel* that "the amount of recovery, even after establishing liability, is . . . highly uncertain in this type of litigation."

12

*Bickel*, 2015 WL 1402018, at *6; *cf. Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 408 (7th Cir. 1999) ("[E]ach case may present its own special set of circumstances and problems."). Second, *Inks* does not scrutinize the results obtained by counsel in different cases, and the Defendant has not pointed to any case law that supports applying such scrutiny. The plaintiff in *Inks* brought discrimination claims arising from the same facts under Title VII and the ADEA, and she obtained substantial relief on her claims even though the court precluded recovery of one type of damages she sought. *Id.* at 1407, 1413–14 ("A plaintiff may be entitled to an award for time spent on claims arising from a common factual core or based on related legal theories."). The Defendant has not argued that the emotional-distress type damages are unrelated, nor does the Defendant challenge any hours billed by Class Counsel.

Since the Court finds that the Plaintiffs achieved a result that does not warrant a reduction in the lodestar amount, Class Counsel's fee award will be in the amount of $271,355.

**B.    Costs**

Under Rule 54(d) of the Federal Rules of Civil Procedure, there is a strong presumption that the prevailing party will be awarded the litigation costs listed in 28 U.S.C. § 1920. *Montanez*, 755 F.3d at 557. Under 28 U.S.C. § 1920, recoverable costs include (1) fees of the clerk and marshal, (2) fees for transcripts, (3) fees for printing and witnesses, (4) fees for copies necessarily obtained for use in the case, (5) docket fees, and (6) compensation of court appointed experts and interpreters.

The parties do not dispute the amount of costs requested. Class Counsel's costs include facsimiles, photocopies, filing fees, mediation expenses, mileage for mediations and transporting the Class witness, parking for settlement conferences and court appearances, and postage. These expenses total $2,313.14 [ECF 167-3]. Although the losing party bears the burden of an

affirmative showing that taxed costs are not appropriate, *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005), district courts have wide discretion to determine whether the prevailing party's claimed expenses are actually taxable as costs. *Deimer v. Cincinnati Sub-Zero Products, Inc.,* 58 F.3d 341, 345–46 (7th Cir.1995). Postage costs are not generally recoverable as costs. *See Wahl v. Carrier Mfg. Co.*, 511 F.2d 209, 217–18 (7th Cir. 1975). Class Counsel billed $126.37 in postage related to this case, and this amount must be deducted. Therefore, Class Counsel's request for $2,313.14 in costs is reduced to $2,186.77. Because the Court finds it reasonable to apply the § 1920 categories of costs to be taxed in the context of this case, the Court awards Class Counsel $2,186.77 in costs.

## CONCLUSION

The Court GRANTS Class Counsel's Verified Petition for Interim Award of Fees and Costs [ECF No. 167]. Class Counsel are awarded $271,355 in attorney's fees and $2,186.77 in costs for charges incurred through March 12, 2015. The Court finds that the fee award is based on a reasonable, current market rate for Class Counsel's work, and the costs taxed are reasonable and appropriate in this litigation.

SO ORDERED on October 23, 2015.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT